IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Docket No. 25-cr-10304-IT |
| GUIDO ANDRES ALEXANDER CUELLAR BATRES | ) ) ) | |
| Defendant | ) ) | |

### GUIDO ANDRES ALEXANDER CUELLAR BATRES' SENTENCING MEMORANDUM

Guido Andres Alexander Cuellar Batres ("Guido"), through his counsel, files the instant sentencing memorandum in support of a sentence at the low end of the advisory guideline sentencing range. Amalio respectfully requests that this Honorable Court exercise its discretion to impose a sentence "sufficient, but not greater than necessary" to achieve the sentencing purposes of 18 U.S.C. §3553(a). Because of the reasons stated below and the Presentence Report Guido is requesting the Court sentence him to the time he has been detained and incarcerated since his arrest on this matter followed by one year of supervised release.

### BACKGROUND

Guido is a citizen of Guatemala. He was raised in Champerico, Guatemala. Champerico is a town of approximately 39,000 located on the Pacific Coast in the

1

southwestern part of Guatemala. It is in the "State" of Retalhuleu. It is the largest port on the coast for that part of Guatemala. Guido grew up there along with his mother and father, a sister (who passed away about seven years ago), and a younger brother (age:18 who is currently attending a university). His mother and father are government employees at the port. Guido was also employed at the port. Guido went to school in Champerico and eventually began attending the Universidad Mariano Galves de Guatemala in Retalhuleu, Guatemala. He completed three years of a six-year law degree.

Guido would often travel to the United States and stay with his uncle who lives in Massachusetts. He had traveled here regularly since he was eight years old. Often spending his school breaks here. He worked at the port in order to make enough money to travel here. In 2020 Guido traveled to the United States to visit his uncle. He did not return to Guatemala. Instead, he stayed here. At that time Guido had completed his three years of a six-year university program to earn a law degree in Guatemala. His goal was to become an attorney there. A good profession as long as you were willing to properly represent members of the gangs that permeate Guatemalan cities. The average daily income for a worker in Guatemala is $3-4 dollars per day. The poverty line in Guatemala is $2 per day. While attorneys may make more than that, it became obvious to Guido that working here was financially more beneficial and safer that even being an attorney in Guatemala.

Guido went right to work in 2020. Since his time here he has worked for a company, Comfort Tree/Rosado and Sons, in Acton, Massachusetts. They are a landscaping design and construction company. Guido would routinely work 60-70 hours per week. He even was doing landscaping design projects on his own on the side. His ultimate goal was to start his own business. If the occasion arose, he would recruit and financially assist other Guatemalan

nationals to obtain employment and get settled (including financial assistance). He never received any public financial assistance while he was here.

On May 15, 2025, Guido was arrested on an outstanding immigration warrant for overstating his visitor visa in Marlborough, Massachusetts. He was indicted and charged with the Assaulting, Resisting, Opposing, Impeding, Intimidating, or Interfering with a Federal Officer in violation of 18 U.S.C. § 111 (a) (1) in July of 2025. There is no plea agreement in this case.

## LAW AND ARGUMENT

The defendant respectfully asks the Court to consider the imposition of a sentence of time served followed by one year of supervised release. In seeking a sentence at the low end of the applicable advisory guideline range sentence, the defendant notes that the United States Sentencing Guidelines, as promulgated by the United States Sentencing Commission, no longer bind federal courts. *United States v. Booker, 543 U.S. 220, 259 (2005)*. Indeed, the United States Supreme Court's landmark *Booker* decision declared the mandatory provisions of the USSG unconstitutional. *Id. Booker*, however, reaffirmed a sentencing court's duty to sentence a defendant in accordance with those provisions of the Sentencing Reform Act specified in 18 U.S.C. §3553(a).

The §3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, to afford adequate deterrence, to protect the public, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing

Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victim of the offense. *United States v. Robinson, 433 F.3d 31, 35 (1ˢᵗ Cir. 2005)*. The district court, while not bound by the guidelines, still must consult and consider them when imposing a sentence. *Booker, 543 U.S. at 264*. Courts of appeals cannot disturb a district court's sentence unless the appellate court finds that sentence unreasonable. See *Id*. The United States Supreme Court clarified post-*Booker* sentencing procedure in *Gall v. United States, 128 S. Ct. 586 (2007)* where the *Gall* Court indicated that when sentencing a defendant,

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the §3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*128 S. Ct. at 596-597* (internal citations and quotations omitted).

After *Gall*, the sentencing inquiry-once the court has duly calculated the GSR-ideally is broad, open-ended, and significantly discretionary. Sentencing becomes a judgment call, and a variant sentence may be constructed based on a complex of factors whose interplay and precise weight cannot even be precisely described." *Id. At 91-92* (internal citations and quotations omitted) (affirming a 91-month downward deviation from the advisory sentencing guideline range).

4

The Defendant's accepts and has no objection to the acceptance and admission of the guidelines as enumerated in the PSR. The PSR calculation is 8-14 months (Total Offense Level of 11 and Criminal History Category I). The prior criminal record is almost nonexistent. He had a criminal charge in 2023 from the Marlborough District Court that was continued on his plea of not guilty for one year under M.G.L. Chapter 276 § 87. It was dismissed in June of 2023. Guido has accepted and understands that he is going to be deported again back to Guatemala where his future is uncertain. There is a final order of removal with United States Immigration Service  He understands that the determination of his deportation does not lie with this court. Immediately upon completion of his sentence in this case he will be turned over to ICE and remain in custody until such time as the order of removal can be executed.

At the time of his arrest Guido was a hard-working young man who never needed or required any public assistance. He was enjoying the fruits of his labor and was considered highly skilled and talented. He was getting so many requests to do work on the side he was planning on starting his own business. Guido never dreamed that he was going to be the target of a sting operation and that a warrant existed to arrest him. When law enforcement took him into custody he panicked, never imagining that he had done anything wrong, except overstay his visa. When the officers converged on the vehicle he was sitting in, he was shocked. The force of the officers' actions created an incredible amount of chaos. He did not fully understand what was occurring. He was there to talk about a work project someone wanted to hire him to complete. The confusion was overwhelming. In the panic he got into the altercation with the federal officers. He deeply regrets that. He deeply regrets that he put others in danger of being hurt.

## CONCLUSION

The Defendant pleaded guilty to the indictments on October 30, 2025. There is no plea agreement for the Court's consideration. Guido has, from the beginning of this case, taken responsibility for his actions. He respectfully requests that this court sentence him to time served, from the date of his arrest on May 15, 2025, through January 12, 2026, (7 months, 29 days) followed by one year of supervised release.

Respectfully submitted,
GUIDO ANDRES ALEXANDER
CUELLAR BATRES
By and through his attorney,

/s/ *Charles E. Dolan*
Charles E. Dolan,
BBO#546344
Raipher, PC
265 State Street
Springfield, Massachusetts 01103
Tel.:   (413) 746-4400
Fax:   (413) 746-2816
ced@raipher.com

## Certificate of Service

I, Charles E. Dolan, hereby certify that on the 16TH day of December 2025, I have served all parties of record registered with ECF for this matter with a true copy of the foregoing memorandum.

/s/ *Charles E. Dolan*
Charles E. Dolan