UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 25-10304-IT |
| | ) |
| GUIDO ANDRES ALEXANDER CUELLAR BATRES, | ) |
| | ) |
| Defendant | ) |
| | ) |

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant stands before the Court convicted of assault on a federal officer, in violation of 18 U.S.C. § 111(a)(1). Because the acts charged in the indictment involved physical contact with the victim, the defendant faces a maximum possible sentence of incarceration of 8 years. *Id.* Here, the guidelines sentencing range (GSR) as determined in the PSR is 8-14 months, calculated as follows: a base offense level of 10, pursuant to USSG § 2A2.4(a); an increase of 3 levels because the offense involved physical contact with the victim, pursuant to USSG § 2A2.4(b)(1)(A); and a decrease of 2 levels for acceptance of responsibility, pursuant to USSG § 3E1.1(a). PSR at 6. With the resulting total offense level of 11 and a criminal history category (CHC) of I, the defendant's GSR is 8-14 months. PSR at 9.

The government does not seek a sentence outside the PSR, nor does the government believe there are either legal issues not adequately addressed in the PSR or factual disputes that require a hearing. Based on the facts and circumstances of the case, however, the government does seek a sentence at the high end of the GSR – 14 months – together with a 1-year term of supervised release and the mandatory $100 special assessment.

BACKGROUND

At approximately 9:45 a.m. on May 15, 2025, three Immigration and Customs Enforcement ("ICE") officers – a Supervisory Detention and Deportation Officer ("SDDO"), and two Deportation Officers ("DO Carvalho" and "DO Frey") – and a Drug Enforcement Administration ("DEA") Special Agent ("SA") (together, "the Officers"), set up surveillance in a parking lot in Marlborough, Massachusetts. There was at that time an outstanding immigration arrest warrant for the defendant, a Guatemalan citizen who had overstayed his non-immigrant visitor visa by over four years. The Officers saw a vehicle arrive in the parking lot being driven by an unknown male. The Officers, who were wearing outer garments identifying themselves as law enforcement officers, approached the vehicle and recognized the only passenger to be the defendant, who was sitting in the front passenger seat.

The Officers ordered the defendant in both English and Spanish to step out of the car. The defendant refused. The Officers instructed the defendant and the driver in both English and Spanish to unlock the vehicle, but neither the defendant nor the driver did so. The Officers instructed the defendant and the driver to keep their hands visible. The defendant did not do so but instead reached down such that the Officers lost sight of his hands. Given the refusal of the defendant and the driver to unlock the doors and the concern that the defendant might be reaching for a weapon, the SDDO made the decision to break the rear passenger side window so that the Officers could gain entry to the vehicle. With the window broken, the DEA SA entered the rear passenger seat and was able to unlock the front passenger door.

DO Carvalho opened the door and removed the defendant from the vehicle. DO Carvalho and DO Frey took the defendant to the rear of the vehicle. The defendant resisted the DOs' efforts to bring his arms behind his back so they could handcuff him. The DOs brought the defendant to

the ground to further their effort to handcuff him. The defendant forcibly resisted the Officers' efforts to handcuff him. In so doing, the defendant, among other things, attempted to bite DO Carvalho's leg, although he succeeded in biting only DO Carvalho's pants leg; the defendant bit DO Frey above DO Frey's left wrist; and the defendant struck DO Frey multiple times in the head with a closed fist.

The Officers ultimately succeeded in handcuffing the defendant and applying leg restraints. During this process the defendant continued to forcibly resist the Officers, including, among other things, by kicking at the Officers.

The Officers took the defendant to DO Frey's vehicle where they intended to secure him in the rear seat. While the Officers attempted to do so, the defendant jumped a number of times to prevent being put in the back of the vehicle. DO Frey entered the rear seat from the driver's side in order to pull the defendant into the vehicle. As DO Frey took hold of the defendant, the defendant "head-butted" DO Frey and then spat directly into DO Frey's face and eyes.

Ultimately the Officers secured the defendant in the rear of the vehicle.

## ARGUMENT

A number of the sentencing factors enumerated at 18 U.S.C. § 3553(a) call for a sentence at the high end of the GSR.

**18 U.S.C. § 3553(a)(1) – The nature and circumstances of the offense.**

The nature and circumstances of the defendant's conduct plainly warrant a significant sentence. Far from a single push or shove – serious acts in their own right – the defendant repeatedly committed acts of violence against the Officers and DO Frey in particular: the defendant attempted to bite DO Carvalho's leg; succeeded in biting DO Frey's wrist; struck DO Frey's head multiple times; head-butted DO Frey, and spat in DO Frey's face and eyes. Any of these acts

would alone merit a sentence within the GSR. The number and nature of them fully justify a sentence at the top of the range.

**18 U.S.C. § 3553(a)(2)(A) – The need for the sentence imposed to reflect the circumstances of the offense, to promote respect for the law, and to provide just punishment for the offense.**

A sentence at the high end of the GSR will help to promote respect for the law by demonstrating that attacks on law enforcement officers carrying out their duties will be met with serious consequences. A high-end sentence will also provide appropriate punishment for the defendant's repeated and flagrant violent acts.

**18 U.S.C. § 3553(a)(2)(B) – The need for the sentence imposed to afford adequate deterrence to criminal conduct.**

A sentence at the high end of the GSR will also deter others similarly situated from assaulting and resisting law enforcement officers engaged in the performance of their official duties. Such a sentence will also deter the defendant himself from repeating such conduct in the event he ever again finds himself in a similar circumstance.

**18 U.S.C. § 3553(a)(6) – The need for the sentence imposed to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

One of the main objectives of the sentencing guidelines has been to seek reasonable uniformity in sentencing by narrowing the disparity in sentences imposed on similar offenders for similar conduct. A sentence within the applicable GSR in this case will help to promote this goal.

The defendant, however, seeks a low-end sentence. In so doing, he seeks to minimize his conduct by claiming that "he was shocked" when the officers approached the car he was in to arrest him; that "[t]he force of the officers' actions created an incredible amount of chaos"; that "[h]e did not fully understand what was occurring"; that "[t]he confusion was overwhelming"; and that [i]n the panic he got into the altercation with the federal officers." Defendant's Sentencing Memo at

4

5. While the government believes that the defendant may well have been surprised at the outset of the encounter, by the time that the Officers, wearing garments that identified themselves as law enforcement, approached the car, ordered the defendant to get out, ordered the defendant to unlock the car door, and ordered him to show his hands, it surely was clear to the defendant that the people outside the car were members of law enforcement.  As they attempted to handcuff the defendant once they had removed him from the vehicle, he nonetheless bit, struck, and struggled with them until they finally secured him.  As the complaint affidavit in this case indicates, a bystander captured this part of the encounter on video, and it is clear from the video that it was the defendant who was engaging inn violent conduct while the Officers were simply trying to take him into custody.  But it did not end there.  After the defendant had been handcuffed the defendant continued in assaulting and resisting the Officers, including by head-butting and spitting on DO Frey.  In short, however surprised the defendant may have been at the outset of the encounter, it quickly was apparent who and what the Officers were, and the defendant nonetheless persisted in resisting and assaulting them.  As a result, a sentence at the high end of the GSR is necessary to vindicate the § 3553(a) factors.

## CONCLUSION

For the foregoing reasons, the government recommends that the Court impose a sentence of 14 months, one year of supervised release, and the mandatory $100 special assessment.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:   /s/Robert E. Richardson
ROBERT E. RICHARDSON
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

      I, Robert E. Richardson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 5, 2026.

                                              /s/ Robert E. Richardson
                                              ROBERT E. RICHARDSON